**In re August E. MANSKER d/b/a Mount Hope Farm et al Debtor.**

**August E. MANSKER Plaintiff,**

v.

**John M. CAMPBELL, Defendant.**

**Bankruptcy No. 4-84-00269-G.**

**Adv. No. 4-85-0105.**

United States Bankruptcy Court, D. Massachusetts.

May 22, 1986.

Philip J. Hendel, Hendel, Collins, Stock & Newton, P.C., Springfield, Mass., for plaintiff.

Maurice M. Cahillane, Egan, Flanagan, Egan, P.C., Springfield, Mass., for defendant.

## MEMORANDUM

JAMES A. GOODMAN, Bankruptcy Judge.

This matter is before the Court on a Motion by the Plaintiff for Assertion of Subject Matter Jurisdiction and a Demand by the Defendant for a Jury Trial. A hearing was held before Judge Paul W. Glennon on both of those matters on February 18, 1986, at which time they were taken under advisement and the parties were asked to submit briefs on the issues.

Judge Glennon retired prior to his having an opportunity to render a decision on those matters under advisement. At an attorney conference on March 26, 1986, the parties agreed that Judge James A. Goodman, Bankruptcy Court Judge for the District of Maine, temporarily assigned to the District of Massachusetts, could decide the matter, based on the record now before the Court.

On May 22, 1984, the Debtor, August E. Mansker (the "Debtor-in-Possession" or "Mansker") filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code. Since that time, the Debtor has managed its property as a Debtor-in-Possession.

On May 15, 1985, John M. Campbell, the Defendant, filed a proof of claim for $110,000, plus interest from October 7, 1984, as an administrative expense in the Debtor-in-Possession's Chapter 11 proceeding. On August 12, 1985, Mansker filed an objection to Campbell's claim.

On September 3, 1985, the Debtor-in-Possession filed a complaint to Compel Turnover pursuant to 11 U.S.C. §§ 541 and 542. The complaint alleges that on July 30, 1984, the Debtor-in-Possession and John M. Campbell, the Defendant, entered into a contract with regard to a sale to Campbell of a major asset of the Debtor-in-Possession's Chapter 11 estate, the Mount Hope Farm. The complaint further alleges that in August 1984, Campbell breached the contract by failing to pay personnel and maintenance expenses associated with Mt. Hope Farm. The Debtor-in-Possession, in January 1985, sold the property to a third party, for a price which was significantly less than that called for by the alleged contract between the Debtor-in-Possession and Campbell. The Debtor-in-Possession is now seeking, as damages for the alleged breach, the unpaid maintenance expenses and the difference between the contract price in July 1984 and price paid by the third party in January 1985, subject to certain set offs.

The Defendant filed, on November 20, 1985, an Answer and Counterclaim. In his answer, Campbell asserts that this Court lacks jurisdiction over the subject matter of the Debtor-in-Possession's complaint. In his counterclaim, he alleges that there were two agreements between the parties, that the property was sold to a third party in October of 1984 (not January of 1985), and that at the time the property was sold, Campbell was in compliance with both of the agreements. The counterclaim alleges that the Debtor-in-Possession breached the agreements and seeks the return of a $110,000 downpayment made by Campbell, together with 17% interest from October 8, 1984, the date the Debtor-in-Possession allegedly breached the agreements.

On December 2, 1985, the Defendant filed a Demand for Jury Trial. On December 13, 1985, the Debtor-in-Possession filed an Answer to the Counterclaim and a Motion for Assertion of Subject Matter Jurisdiction.

## DISCUSSION

This Court has jurisdiction to hear the above-captioned adversary proceeding. The United States District Court has jurisdiction over all cases under Title 11, and over all civil proceedings arising under Title 11, or arising in or related to cases under Title 11, 28 U.S.C. § 1334. Section 157(a) of Title 28 states that:

Each district court may provide that any or all cases under title 11 and any or

all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

The District Court for the District of Massachusetts, in an order dated July 12, 1984, has provided for a general referral of those categories of cases and proceedings to the bankruptcy judges for the District of Massachusetts.

When a matter is found to be a "core" proceeding, this is, a case under Title 11 or arising in a case under Title 11, the bankruptcy court may enter an order and a judgment. 28 U.S.C. § 157(b). When a matter is determined to be "non-core", that is, related to a case under title 11, the bankruptcy court may submit proposed findings of fact and conclusions of law to the district court, subject to a de novo review. 28 U.S.C. § 157(c). Accordingly, this Court must first determine whether the adversary proceeding in question is a core or a non-core proceeding.

Although 28 U.S.C. § 157(b)(3) states that the "bankruptcy judge shall determine ... whether a proceeding is a core proceeding ..." or a non-core proceeding, the terms "core" and "non-core" are not specifically defined anywhere in the Bankruptcy Amendments and Federal Judgship Act of 1984. Section 157(b)(2) does contain a list of approximately fifteen illustrations of core proceedings, but the list is non-exclusive and the bankruptcy courts are left with the task of defining, on a case by case basis, what is a core proceeding, keeping in mind the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

There has been a split of authority as to whether a "broad" or a "narrow" view should be taken of what constitutes a core proceeding, among the Courts considering the question. *In re Arnold Print Works, Inc.*, 54 B.R. 562 (Bankr.D.Mass.1985). Without addressing that split at length, the Court, for the following reasons, finds that the above-captioned matter is a core proceeding.

Among the list of illustrations of core proceedings in section 157(b)(2) are several which would appear, at least on their face, to be relevant to the adversary proceeding in question. Among them are:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate ...

(C) counterclaims by the estate against persons filing claims against the estate;

(E) orders to turn over property of the estate;

(N) orders approving the sale of property ... and

(O) other proceedings affecting the liquidation of the assets of the estate ...

28 U.S.C. § 157(b)(2).

The Court notes that this proceeding, and the dispute underlying it, arose out of an attempt by a debtor-in-possession to sell an asset of the estate, pursuant to 11 U.S.C. § 363. The Court further notes that, although the proceeding now before the Court is a Complaint for Turnover filed by the Debtor-in-Possession, Campbell did file a proof of claim for an administrative expense which has to do with the same set of facts as the complaint. In that sense, the Debtor-in-Possession's complaint might be considered a counterclaim by the Debtor-in-Possession against a person filing a claim against the estate.

The basic dispute in this case is a contract action. Contract claims have been determined to involve property interests of the estate, warranting treatment as core proceedings. See, e.g. *In re Pied Piper Casuals*, 50 B.R. 549 (Bankr.S.D.N.Y.1985); *In re Lion Capital Group*, 46 B.R. 850 (Bankr.S.D.N.Y.1985). The Court finds the case of *In re L.A. Clarke and Son, Inc.*, 51 B.R. 31 (Bankr.D.D.C.1985) to be particularly persuasive. In that case, the court held that a chapter 11 debtor's complaint to recover post-petition account receivables was a core proceeding. The court relied upon 28 U.S.C. §§ 157(b)(2)(A) (matters concerning the administration of the estate) and (B) (allowance or disallowance of

claims) and stressed the fact that all "the operative events giving rise to the claim and counterclaim occurred during the period after the Debtor's chapter 11 petition was filed, while the Debtor was a Debtor-in-Possession, and they all involved the activities of the Debtor as Debtor-in-Possession, acting under the aegis of this Court's protection and authority." *In re L.A. Clarke and Son, Inc.*, 51 B.R. at 33. The operative events in the present case likewise occurred post-petition and involved activities of the Debtor as Debtor-in-Possession, and for that reason the Court finds this to be a core proceeding.

■ The Court now turns to the question of whether the defendant has a right to a jury trial and finds that he does not. *See, Matter of Baldwin-United Corporation*, 48 B.R. 49 (Bankr.S.D.Ohio 1985). In the *Baldwin-United* case, the court held that a defendant had no right to a jury trial in a core proceeding. The court stated that since "Congress apparently intended 'core' proceedings to include matters which were within the traditional summary jurisdiction of the Bankruptcy Courts under the 1898 Act," and since *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) held that matters which fell within the traditional summary jurisdiction of the Bankruptcy Courts carried no right to a jury trial, it follows that there is no constitutional right to a jury trial in "core" proceedings. *Matter of Baldwin-United Corp.*, 48 B.R. at 56.

Accordingly, the Court will enter, concurrent with this memorandum an order finding that this matter is a core proceeding and denying the Defendant's Demand for a Jury Trial.