**In re HARBOR PARK ASSOCIATES LIMITED PARTNERSHIP, Debtor.**

**Martin R. POLLNER, Trustee, Plaintiff–Appellee,**

**v.**

**The CONNECTICUT BANK AND TRUST COMPANY, N.A., Bally's Park Place, Ramada Inn Corporation and Tropworld Hotel and Casino, Defendants–Appellants.**

**Bankruptcy No. 88–b–11851 (TLB).**
**Adv. No. 89–59990A.**
**No. 89 Civ. 5632 (PKL).**

United States District Court,
S.D. New York.

April 4, 1990.

---

Pollner, Mezan, Stolzberg & Berger, P.C., New York City (Michael S. Etkin, Edith M. Futerfas, of counsel), for plaintiff-appellee.

Winthrop, Stimson, Putnam & Roberts, New York City (John F. Pritchard, of counsel), for defendants-appellants.

## OPINION & ORDER

LEISURE, District Judge:

Defendant-appellant Connecticut Bank and Trust Company, N.A. ("CBT"),[1] is before this Court seeking to withdraw the reference of a proceeding to the District Court, which proceeding was initiated in the United States Bankruptcy Court. Plaintiff–Appellee Martin R. Pollner ("Pollner"), as Chapter 11 Trustee for Harbor Park Associates Limited Partnership ("Harbor Park") opposes the withdrawal of the reference. The primary issue currently before this Court which will determine if this Court should withdraw the reference is whether the instant action is a core or non-core proceeding within the meaning of 28 U.S.C. § 157.

## FACTUAL BACKGROUND

On August 26, 1988, Harbor Park, a Connecticut limited partnership which operates the Harbor Park restaurant ("the restaurant") in Middletown, Connecticut, filed a voluntary bankruptcy petition pursuant to Chapter 11 of Title 11 of the United States Code. The bankruptcy court subsequently appointed Pollner as Chapter 11 trustee by order dated June 23, 1989. Pollner's action before the bankruptcy court seeks to secure the assets of Harbor Park by permanently enjoining defendant CBT from accepting, honoring, satisfying or paying on or against two cashier's checks which were acquired by Leslie Victor ("Victor") from

---

**1.** Bally's Park Place ("BPP"), Ramada Inn Corporation ("Ramada") and Tropworld Hotel and Casino ("THC") have also been named as defendants in this action but are not currently before this Court regarding the motion to withdraw the reference of the proceeding.

funds allegedly stolen or embezzled from Harbor Park and by ordering CBT to turn over these funds to the debtor in bankruptcy. Plaintiff's second count requests compensatory damages from CBT for alleged gross negligence equalling at least $205,-000, the amount of money allegedly stolen by Victor, plus costs, expenses and reasonable attorney's fees.[2]

On July 19, 1989, representatives of the trustee contacted CBT, an authorized depository in which Harbor Park had its funds, to inform the bank that Pollner had been appointed the trustee of Harbor Park. The trustee also set up an appointment to obtain signature cards and appropriate forms to change the signatures on Harbor Park's accounts. At that time, Victor was the sole remaining officer of Harbor Park and was a signatory on the partnership's bank accounts.

The following day, July 20, 1989, Victor requested $10,000 in cash from CBT and ordered that two cashier's checks be issued in the amount of $205,000. Although, Victor had no authority to make these withdrawals, and CBT was officially on notice of the appointment of the trustee, CBT complied with Victor's request without notifying the trustee. CBT eventually notified the trustee of these significant withdrawals on July 24, 1989. Subsequently, on July 25, 1989, the bankruptcy court issued a temporary restraining order enjoining CBT from honoring the cashier's checks. On August 3, 1989, the bankruptcy court issued a preliminary injunction providing the same relief pending a final determination of the action. Pollner claims that the restaurant is the single most important tangible asset of the debtor's estate and that the loss of such a substantial amount of money would severely impact on the restaurant's cash flow. Pollner opposes the motion to withdraw this adversary proceeding from the bankruptcy court.

## DISCUSSION

The Court must first determine whether the instant action is a core or a non-core proceeding. According to § 157(b)(1) of the Bankruptcy Code, the bankruptcy court "may hear and determine all cases under title 11 and all core proceedings arising under title 11 ... and may enter appropriate orders and judgments." Non-core proceedings are those which are "otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). While non-core proceedings may be heard by bankruptcy judges, if both parties have not consented to the forum, as in the instant case, the bankruptcy court may not enter a final order or judgment. Section 157(c)(1) instructs that the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court" and the District Court must subsequently conduct a de novo review of any matters to which either party objects. Therefore, if the action is a core proceeding, it may remain in the bankruptcy court for a final determination. However, if it is a non-core proceeding, logic dictates that, in the interest of judicial economy, the action should be withdrawn to the District Court, as the bankruptcy court will be unable to render final judgment.

Section § 157(b)(3) sets forth that it is within the bankruptcy court's jurisdiction to decide whether or not a proceeding is core. *See also In re Friedberg*, 87 B.R. 3 (S.D.N.Y.1988); *Interconnect Telephone Services Inc. v. Farren*, 59 B.R. 397 (S.D. N.Y.1986). However, where the bankruptcy court has not entered a binding judgment on the matter, the District Court is "empowered to make such a determination." *Interconnect Telephone Services, supra*, 59 B.R. at 401 n. 2; *see also In re Belles Terres Partners*, No. 85–C–5355, 1985 WL 3443 (N.D.Ill., Sept. 12, 1985). Therefore, in order to promote the interests of judicial economy, this Court will rule on this matter so as not to delay the bankruptcy proceeding any further.

---

**2.** Defendant BPP is a payee on one of the cashier's checks at issue, and is therefore a nominal defendant in the adversary proceeding. Ramada is payee on the second cashier's check at issue and operates defendant THC. Therefore, both Ramada and THC are also named as nominal defendants in the adversary proceeding.

■ The distinction between core and non-core proceedings was established in the Bankruptcy Amendments and Federal Judgeship Act of 1984. 28 U.S.C. § 157(b) sets forth a non-exclusive list of core proceedings. The relevant provision at issue here is § 157(b)(2)(A). That section provides that core proceedings include "matters concerning the administration of the estate." The controversy now before the Court fits squarely within the wording of the statute. The pending action seeks to recover a substantial amount of funds which were allegedly fraudulently obtained from the accounts of the most significant asset of the debtor, Harbor Park. Therefore, the issues involved in the instant action concern the recovery of assets which directly influence the effective administration of the estate.

■ This Court recognizes that the language of the statute is broad and should not be construed to include matters which are only tangentially related to the administration of the estate. *See In re Ben Cooper, Inc., Ben Cooper, Inc. v. The Insurance Company of the State of Pennsylvania*, 896 F.2d 1394, 1398 (2d Cir.1990); *In re Wood*, 825 F.2d 90, 96 (5th Cir.1987). However, the Second Circuit's recent decision in *In re Ben Cooper, Inc., supra* (hereinafter *"Ben Cooper"*), accepted the First Circuit's proposition that this statutory grant is to be interpreted liberally. The Second Circuit stated that " 'the legislative history of [§ 157] indicates that Congress intended that "core proceedings" would be interpreted broadly, close to or congruent with constitutional limits. The sponsors repeatedly said that 95 percent of the proceedings brought before bankruptcy judges would be core proceedings.' " *Id.* at 1398, *quoting In re Arnold Print Works, Inc.*, 815 F.2d 165, 168 (1st Cir.1987).

Appellant argues that because plaintiff's claims are based on state law, they do not constitute a core proceeding. There is case law which supports the proposition that state law claims can be considered non-core proceedings. *See In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir.1986); *In re Athos Steel and Aluminum, Inc.*, 71 B.R. 525, 534 (Bankr.E.D.Pa.1987); *In re Wisconsin Barge Line, Inc.*, 63 B.R. 40, 43 (Bankr.E.D.Mo.1986). However, the statutory language again explicitly supports the conclusion that the instant case should not be deemed a non-core proceeding merely on this basis. Section 157(b)(3) of the Bankruptcy Code clearly states that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."

Therefore, bankruptcy courts are not precluded from hearing state law claims when the claims bear heavily on the administration of the estate. *See Ben Cooper* at 1399; *In re Manville Forest Products Corp., Gulf States Exploration Co. v. Manville Forest Products Corp.*, 896 F.2d 1384, 1389 (2d Cir.1990). "The relevant inquiry is whether the nature of [the] adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power." *In re Manville Forest Products Corp., id* at 1389; *see also In re Wood, supra*, 825 F.2d at 97; *In re Arnold Print Works, Inc., supra*, 815 F.2d at 169.[3]

According to the Second Circuit, the point at which a claim arises is also an important element in determining whether a proceeding is core or non-core. A "postpetition complaint that has as its subject matter an estate asset must be analyzed differently than one arising pre-petition." *Ben Cooper*, at 1399. In fact, the Court held that "the timing of a dispute may render it uniquely a bankruptcy case." *Id.* at 1400.

---

3. Although this Court noted in dictum in *In re Wedtech Corp.*, 94 B.R. 293 (S.D.N.Y.1988), that the issue before it was properly a core proceeding because it was based on state law, that case is distinguishable from the one at hand. The controversy in *Wedtech* involved a claim which arose pre-petition, whereas the instant action arose post-petition. The Second Circuit has recently held that a post-petition state law claim can properly be considered a core proceeding. *See Ben Cooper* at 1399–1400.

In *Ben Cooper*, the Second Circuit ruled that a post-petition, state law claim based on a breach of contract was a core proceeding. The court distinguished its holding from the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Marathon*, the Supreme Court considered the jurisdiction of bankruptcy judges and held that a pre-petition state contract claim ought to be heard by an Article III judge, i.e. the District Court. The recent Second Circuit decisions indicate a narrow reading of *Marathon* is required to be consistent with Congressional intent evinced in the language of the Bankruptcy Amendments and Federal Judgeship Act of 1984. Congress enacted that statute subsequent to *Marathon* in order to eliminate the controversy surrounding this area. The aforementioned relevant section of this statute provides that whether or not a proceeding is core shall not be determined solely on the basis that its conclusion is affected by State law. *See* 28 U.S.C. § 157(b)(3); *Ben Cooper* at 1399; *see also In re Arnold Print Works, supra*, 815 F.2d at 168–171 (post-petition action arising from sale of estate's assets held to be core proceeding); *In re Jackson*, 90 B.R. 126, 128 (Bankr.E.D.Pa.1988) (matter concerning post-filing conduct of defendants relating directly to administration of estate held to be core proceeding); *In re L.A. Clarke and Son, Inc.*, 51 B.R. 31 (Bankr.D.Col.1985) (although both parties' claims arose under state law, determination whether proceeding is core is not made solely on this basis).

This Court considers the negligence action in the instant case to be analogous to the state law contract claim in *Ben Cooper*. The instant claim based on state law arose post-petition and involves defendant's conduct in response to the appointment of the trustee. Therefore, even though defendant is not a creditor in the bankruptcy action, plaintiff-appellee's claim would not exist but for the debtor's bankruptcy petition, and the claim is essential to the administration of the estate. *Cf. In re Stockert Flying Service, Inc.*, 74 B.R. 704, 707 (N.D.Ind.1987) (although action was state law

negligence claim, but for debtor's filing, plaintiff would have no suit and is therefore a core proceeding). The combination of these factors constitutes a showing that the instant action should be deemed a core proceeding to be adjudicated in the Bankruptcy Court.

The Second Circuit was careful to explain that language from cases in other circuits may be read to conflict with its holding in *Ben Cooper*. *See Ben Cooper* at 1400. However, to the extent that such cases conflicted with this holding, the Second Circuit declined to follow them. *See id.* In addition, it is the teaching of the *Ben Cooper* Court that lower court cases, such as those relied on by appellant, which hold pre-petition claims to be non-core, are not inconsistent with the holding at hand. *See id.*

Furthermore, the decision of *Ben Cooper* settled another controversial area of law in this Circuit. Although the Supreme Court's recent decision in *Granfinanciera, S.A. v. Nordberg*, —— U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), established that, where the relief sought by plaintiff is characterized as legal, the Seventh Amendment guarantees a party a jury trial upon request, *id.* 109 S.Ct. at 2802, it was not clear whether the bankruptcy court could hold a jury trial when the legal claim also constituted a core proceeding. The *Ben Cooper* Court held that *"Granfinanciera* does not foreclose the possibility of jury trials in the bankruptcy court"* for proceedings that are both legal in nature and core under the Bankruptcy Code. *See In re Ben Cooper* at 1401.

In the instant action, the trustee is seeking compensatory damages for an action in negligence against CBT. This is comparable to the alleged negligence and malpractice at issue in *Ben Cooper*, where the Court stated that "[t]he conclusion that 'in an ordinary tort action ... the right of trial by jury is guaranteed by the Constitution,' is so obvious that it hardly needs belaboring." *Id.* at 1402, *quoting United States v. Fotopulos*, 180 F.2d 631, 634 (9th Cir.1950). Therefore, it is also clear that the instant action is legal in nature, and

that accordingly, defendant is entitled to a jury trial. Thus, this recent ruling eliminates any question that the instant action need be withdrawn to the District Court in order to ensure a jury trial for the defendant. Defendant's concern that it would not receive a jury trial in the bankruptcy court is no longer substantiated, and therefore, this question need not prevent the pending action from being heard any longer.

### CONCLUSION

Therefore, for the above stated reasons, defendant's motion to withdraw the reference from the bankruptcy court to the District Court is denied. The action is remanded in its entirety.

SO ORDERED.